IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES "TROY" DURHAM            :
                              :
v.                            :    Civil No. WMN-10-2534
                              :
ROBERT N. JONES <u>et al.</u>           :
                              :

  *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

**<u>MEMORANDUM</u>**

Before the Court is Defendant Robert Jones' Motion to
Dismiss First Amended Complaint.  ECF No. 15.  The motion is
fully briefed.  Upon a review of the briefing and the applicable
case law, the Court determines that no hearing is necessary,
Local Rule 105.6, and that the motion should be denied.

Plaintiff James "Troy" Durham was employed by the Somerset
County Sheriff's Office (SCSO) from October 1998 through July
2005, and again from July 2006 until the termination of his
position as Deputy Sheriff in September 2009.  Defendant Robert
N. Jones is the Sheriff of Somerset County.  Plaintiff brings
this action challenging Defendant's decision to terminate his
employment.  The facts leading up to that termination as alleged
in the First Amended Complaint are as follows.

On August 21, 2008, Plaintiff was involved in the pursuit
of a motorcycle operator traveling at a high rate of speed.
Plaintiff apprehended the motorcyclist and met some resistance

as he attempted to make the arrest.  To gain compliance,
Plaintiff used force, including: knee strikes to the suspect's
ribs, open hand strikes, and the application of pepper spray.
Plaintiff prepared a report of the arrest, which included an
accurate description of his use of force.

Shortly thereafter, Plaintiff was advised by his superiors
that the motorcyclist was claiming that he was injured during
the arrest.  On August 29, 2008, Sergeant Miles of the SCSO
contacted Plaintiff and ordered him to delete information in his
report related to the use of force.  Miles also indicated that
he wanted the motorcyclist charged with assault and resisting
arrest.  Plaintiff initially refused Miles's request, believing
that altering his report as requested would render it false and
misleading.

In response to Plaintiff's refusal to alter the report of
the incident, Miles told Plaintiff that he was suspended and
threatened him with criminal charges if he did not change the
report as ordered.  Miles went so far as to advise Plaintiff of
his Miranda rights.  When faced with the threat of arrest,
Plaintiff agreed to change his report.

 On September 4, 2008, Plaintiff submitted a grievance to
the Human Resources office of the Commissioners of Somerset
County regarding the August 29, 2008, interaction with Miles.
The grievance named Miles and Defendant Jones as respondents.

Immediately after submitting his grievance, Plaintiff was suspended by a vote of the Commissioners of Somerset County. Plaintiff was also informed that his grievance was going to be referred to Defendant Jones for investigation. In addition, Plaintiff was told that his own conduct during the arrest incident was going to be investigated by Miles and another SCSO officer.

Concerned about this course of events, Plaintiff sent letters to the Maryland State Police, the Maryland Attorney General's Office, the Maryland Police Training Commission, Governor Martin O'Malley, and the Somerset County State's Attorney Office recounting these events and alleging "misconduct, malfeasance, corruption, abuse of power and breach of the public trust" on the part of several SCSO officers, including Defendant Jones. With the letters, Plaintiff attached copies of his grievance, the form indicating he was given his Miranda rights, the police report of the August 21, 2008, incident as originally submitted and as rewritten on the orders of his superiors, and the memorandum suspending him after he filed his grievance. When advised that none of these agencies would assist him, Plaintiff sent similar letters and materials to the press and an unnamed United States Senator.

As a result of Sergeant Miles's investigation, Plaintiff was charged with twelve violations of the SCSO's Rules, Policy,

and Procedures. Ten of those charges related to his use of force in the arrest. Two of the charges arose from his letter writing campaign: a charge of dissemination of departmental information without authorization and a charge of unbecoming conduct. Pursuant to the Law Enforcement Officer's Bill of Rights (LEOBR), a hearing on these charges was conducted on July 16-17, 2009. Plaintiff was acquitted on the ten charges related to the arrest, but found guilty of the two charges related to the letter writing campaign. The hearing board recommended five days of suspension without pay for each of the two findings of guilt.

The hearing board's recommendation was forwarded to Defendant Jones for review. Defendant then informed Plaintiff that he was considering increasing the penalty to be imposed.[1] On September 16, 2009, Plaintiff, represented by counsel, met with Defendant. After the meeting, Defendant increased the penalty to termination of employment. Plaintiff appealed

---

[1] Under LEOBR, Defendant Jones was permitted to increase the recommended penalty, but only after meeting with the officer and giving him the opportunity to be heard on the record. Md. Code Ann., Pub. Safety § 3-108(d)(5)(ii). LEOBR also requires the officer to be provided with written notice, ten days before this meeting, of any material that would be considered in increasing the penalty that was not presented to the hearing board. Id. 3-108(d)(5)(iii).

Defendant's decision to the Circuit Court of Somerset County.[2]
Plaintiff argued that Defendant Jones' decision to increase the
penalty was arbitrary and capricious and that Defendant violated
§ 3-108(d)(5)(iv) of LEOBR by failing to state the evidence upon
which he relied to increase the recommended penalty. He also
contended that his termination was in retaliation of his filing
a grievance. The circuit court affirmed the decision of
Defendant and Plaintiff appealed that decision to the Maryland
Court of Special Appeals where it remains pending.[3]

Plaintiff filed this action initially naming Somerset
County as a defendant. In addition, Defendant Jones was named
as a defendant in his personal and official capacities. The
initial complaint contained four causes of action against
Defendant Jones: retaliatory discharge in violation of his First
Amendment right to free speech (Count I); retaliation in
violation of his due process rights under Article 24 of the
Maryland Declaration of Rights (Count II); retaliation in
violation of his First Amendment right to petition for redress
of grievances (Count III); and retaliation in violation of that
same right under Article 24 of the Maryland Declaration of

---

[2] LEOBR provides for the appeal of final orders made under its
provisions to the appropriate circuit court. Id. § 3-109(a).

[3] An officer aggrieved by a decision of the circuit court can
appeal that decision to the Court of Special Appeals. Id. § 3-
109(b).

Rights (Count IV).  The initial complaint also contained a

"First Amendment Retaliation" claim against Somerset County

(Count VI) and an abusive discharge claim against both Jones and

Somerset County (Count V).

Somerset County filed a motion to dismiss the Complaint, or

in the alternative for summary judgment.  Defendant Jones filed

a motion to dismiss.  In response, Plaintiff filed an amended

complaint, eliminating Somerset County as a defendant and

indicating that Defendant Jones was being sued solely in his

personal capacity.  Plaintiff also completely eliminated the

claims for violation of his state due process rights as well as

his right to petition the government for redress under the First

Amendment of the United States Constitution and under Article 24

of the Maryland Declaration of Rights.  Thus, the First Amended

Complaint is limited to three causes of action:  a free speech

claim under the United States Constitution,[4] a free speech claim

under the Maryland Declaration of Rights,[5] and an abusive

discharge claim.  Plaintiff also added significant factual

allegations to his First Amended Complaint.

---

[4] As it must be, Plaintiff's claim for violation of his right
under the United States Constitution is brought under 42 U.S.C.
§ 1983.

[5] The First Amended Complaint also amended the state
constitutional free speech claim to reference Article 40,
instead of Article 24.

Largely ignoring the fact that Plaintiff amended his initial complaint, Defendant Jones filed a motion to dismiss, ECF No. 15, nearly identical to his previous motion. ECF No. 8. As a result, a significant portion of the pending motion to dismiss attacks claims that Plaintiff is no longer asserting. Furthermore, Defendant's arguments fail to consider or to respond to any of the new factual allegations in the First Amended Complaint.

In the only significant alteration to his motion to dismiss, Defendant inserts a new ground for dismissal but does so in a manner that is rather cryptic and cursory. In a single page of argument, Defendant posits that "Plaintiff is estopped from complaining about the factual basis of the his [sic] disciplinary case." ECF No. 15 at 6. Defendant begins the argument, however, with a faulty factual premise, declaring that "[a]t its core, Plaintiff's complaint in this court is that he was denied due process when he was terminated by Sheriff Jones." Id. This declaration ignores the fact that Plaintiff eliminated any reference to due process in his First Amended Complaint. Defendant then proceeded to provide a one sentence explanation for each of the doctrines of res judicata and collateral estoppel, but fails to explain how they are applicable to

Plaintiffs' current claims, or even which of the doctrines Defendant believes might be applicable.[6]

Justifiably, Plaintiff's counsel complains of the lack of guidance provided by Defendant as to the nature of his estoppel argument. Plaintiff argues that Defendant's argument was so "skeletal" that it should be deemed waived. Nonetheless, Plaintiff's counsel did an admirable job divining the possible thrusts of Defendant's argument and meeting them. In his reply brief, Defendant clarifies, somewhat, the substance of his estoppel argument. As tempted as the Court might be to simply deem Defendant's arguments waived, it will address them on their merits.

When a defense of res judicata is asserted and the former adjudication is a state court judgment, a federal court must apply the res judicata rules of the state that rendered the underlying judgment. See In re Genesys Data Techs, Inc., 204 F.3d 124, 127 (4th Cir. 2000). "Under Maryland law, the

---

[6] In the introductory section of his motion, Defendant refers to a complaint Plaintiff filed against SCSO under Maryland's Whistleblower Law. ECF No. 15 at 3. This complaint was dismissed by the Maryland Office of the Statewide Equal Employment Opportunity Coordinator. Plaintiff appealed that dismissal to the Maryland Office of Administrative Hearings, but then failed to appear for the scheduled hearing and a default was entered against him. It is not clear from the motion to dismiss whether Defendant's estoppel argument was related to this proceeding or to the administrative hearing office and circuit court proceedings described above. Defendant clarified in his reply brief that his estoppel argument was related to the latter. ECF No. 24 at 1.

requirements of res judicata are: (1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and (3) that there was a final judgment on the merits." <u>Colandrea v. Wilde Lake Cmty. Ass'n Inc.</u>, 761 A.2d 899, 910 (Md. 2000).

As for the first requirement of the res judicata test, the Court finds that the parties in this suit are not the same parties or in privity with the parties in the LEOBR action. To the extent that Defendant Jones was a party in the state action, it was clearly only in his official capacity. That is evident in the relief sought in those proceedings, <u>i.e.</u>, Plaintiff's reinstatement and back pay. <u>See</u> Def.'s Ex. 6 (Pl.'s Mem. in the Circuit Ct. at 16); <u>see also</u>, Def.'s Ex. 7 (Opinion and Order of Circuit Ct. at 1, noting the appearance of counsel "represent[ing] the Somerset County Sheriff's Office"). Under the First Amended Complaint in this action, Defendant is being sued solely in his personal capacity. The Fourth Circuit has specifically held that "a government official in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata." <u>Andrews v. Daw</u>, 201 F.3d 521 (4th Cir. 2000); <u>see generally</u>, 1B J. Moore, Moore's Federal Practice, ¶ 0.411 [4], at 436 (2d ed. 1984) (noting that

under general principles of res judicata, a "judgment rendered in one suit has no conclusive force in the other, if the person is a party to one suit solely as an individual, and is a party to the other solely in his [representative] capacity.").

Defendant's only response on the identity of parties issue is to declare that "Maryland [] does not recognize the distinction between 'individual capacity' and 'official capacity.'" ECF No. 24 at 7 (citing Ritchie v. Donnelly, 597 A.2d 432 (Md. 1991)). The Ritchie decision has nothing whatsoever to do with res judicata or estoppel and, as Defendant provides no pincite to the decision, it is difficult to discern how Defendant derived this proposition from that decision. The Maryland Court of Appeals did note in Ritchie that, unlike claims asserted under § 1983, there is no official/individual capacity dichotomy for state constitutional claims. 324 Md. at 373. The Court of Appeals quickly noted, however, "[t]hat this does not mean [] that Maryland law does not recognize an official/individual capacity dichotomy in other contexts." Id. at 373 n.13.

The Court also notes that the Ritchie decision undercuts a related argument made by Defendant elsewhere in his motion. In a portion of his motion labeled, "Defendant Jones is Not a 'Person' Within The Meaning Of 42 U.S.C. § 1983," Defendant seems to argue that Defendant cannot be sued in his personal

capacity because his decision to terminate Plaintiff was within the scope of his official duties: "Sheriff Jones should not have terminated him without an extraordinary reason to do so. Such allegations go to Sheriff Jones' constitutional and statutory duties as Sheriff. To allege otherwise is to elevate form over substance." ECF No. 15 at 8. In rejecting that precise argument, the Court of Appeals observed,

> [n]umerous tortious acts by government officers or employees are committed in the scope of employment but are not caused by a law, policy or custom of the government entity. Therefore, under the Supreme Court's decisions, such torts are not committed in the official capacity of the officers or employees for purposes of § 1983. They are committed in the individual capacity of the officers or employees who are personally liable in damages.

597 A.2d at 442.

Turning to the second requirement for the defense of res judicata, Maryland courts have adopted the "transactional" approach for determining whether a claim presented in the current action is the same as the claim presented in a prior adjudication. Kent County Bd. of Educ. v. Bilbrough, 525 A.2d 232, 237 (Md. 1987) (adopting approach set out in § 24 of Restatement (Second) of Judgments). What constitutes a "transaction" is to be "[d]etermined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit

11

conforms to the parties' expectations or business understanding or usage." Id., 525 A.2d at 238. Furthermore, under this transactional test, "[e]quating claim with transaction" is "justified only when the parties have ample procedural means for fully developing the entire transaction in the one action going to the merits to which the plaintiff is ordinarily confined." Id.

Applying this test, the Maryland Court of Special Appeals has held that a § 1983 claim was not barred under the doctrine of res judicata based upon previous judicial review of an administrative hearing despite the fact that two cases raised "precisely the same assertions." Esslinger v. Baltimore City, 622 A.2d 774, 620, 624 (Md. Ct. Spec. App. 1993). In Esslinger, the plaintiff had previously appealed to the state circuit court an adverse decision of the Zoning Board related to his erection of a satellite disk. When he later brought a § 1983 suit against the Zoning Board and other city employees alleging that they violated his constitutional rights in refusing to allow him to erect the disk, the defendants argued, inter alia, that the action was barred by res judicata. The Court of Special Appeals held that his claims were not barred by res judicata because it was highly unlikely that he could have brought damage claims under § 1983 in the administrative appeal.

A litigant asserting, or defending against, a claim
for damages typically is permitted extensive discovery
to build or defend his case; discovery is usually not
available before a Maryland administrative agency and
certainly was not available in this case.  Yet in
reviewing an administrative appeal the circuit court
is usually, and was here, confined to reviewing the
administrative decision for lack of substantial
evidence or an error in law.  Thus, almost always, and
certainly here, the scope of judicial review of
administrative decisions is narrow.

Esslinger, 622 A.2d at 782 (citations omitted).

Here, as the procedural history recited above clearly
indicates, Plaintiff had no opportunity in the previous
proceedings to develop or bring the claims he now brings.  There
was never the opportunity for discovery.  Furthermore, Plaintiff
had no opportunity to bring a wrongful discharge claim as part
of the administrative proceedings because Defendant did not make
the decision to terminate him until after the administrative
LEOBR proceeding.  Therefore, the Court finds that Plaintiff's
current claims are not barred by res judicata.  See also, Grimes
v. Miller, 448 F. Supp. 2d 664, 671 (D. Md. 2006) (following
Esslinger and holding § 1983 claims not barred by previous
administrative proceedings).

It is not clear from Defendant's motion and reply whether
he is advancing an argument for collateral estoppel, also known
as issue preclusion.  He quotes a case that sets out the test
that must be satisfied for the doctrine to apply but never

applies it to the facts in this action.  ECF No. 24 at 2

(quoting Colandrea, 761 A.2d at 909-10).  To the extent

Defendant is making such an argument, it fails for reasons

similar to the reasons his res judicata argument fails, most

notably, Plaintiff did not have the opportunity to litigate his

wrongful discharge or free speech claim in the administrative

proceedings.

The Court now turns to the Defendant's specific challenges

to the merits of the claims that remain in the First Amended

Complaint.

In his free speech claims under the First Amendment and

under Article 40 of the Maryland Declaration of Rights,

Plaintiff alleges that Defendant Jones terminated his employment

in retaliation for Plaintiff's speaking out publically about the

pressure put on him to make false police reports and file false

criminal charges.  To make out a free speech claim in this

context, a plaintiff must establish three elements:

> First, the public employee must have spoken as a
> citizen, not as an employee, on a matter of public
> concern.  Second, the employee's interest in the
> expression at issue must have outweighed the
> employer's "interest in providing effective and
> efficient services to the public."  Third, there must
> have been a sufficient causal nexus between the
> protected speech and the retaliatory employment
> action.

Ridpath v. Board of Governors Marshall Univ., 447 F.3d 292, 316

(4th Cir. 2006) (citing McVey v. Stacy, 157 F.3d 271, 277-78

(4th Cir. 1998)).

In moving to dismiss the free speech claims, Defendant

makes two arguments.  First, Defendant argues that in sending

out his letters, Plaintiff was "speaking as an employee and not

as a citizen on a matter of public concern."  Mot. at 12.

Second, Defendant argues that, "[e]ven if Plaintiff were

speaking as a citizen on a matter of public concern, . . .

Plaintiff's interest in the speech does not outweigh the

interest of [SCSO] in 'providing effective and efficient

services to the public.'"  Id. at 15 (quoting Ridpath, 447 F.3d

at 316).

As to the first argument, Plaintiff clearly was speaking as

a citizen and not as an employee.  As Plaintiff carefully

expounds in the First Amended Complaint, and Defendant does not

contest,[7] it was not within the scope of his job duties or

responsibilities to send any of the letters he sent complaining

of Defendant's actions.  First Am. Compl. ¶ 21.  These letters

were not addressed through Plaintiff's chain of command but were

---

[7] Because Defendant simply pasted the argument on this issue from
the motion to dismiss the original complaint into the motion to
dismiss the First Amended Complaint, he offers no meaningful
response to Plaintiff's new allegations.  Furthermore, Defendant
makes no argument, whatsoever, in his Reply on this issue, the
Reply being limited to Defendant's "estoppel" argument.

prepared to voice his own personal opinions regarding the breach

of public trust by [SCSD]."   <u>Id.</u>

Defendant's entire "speech as an employee" argument is

premised on the fact that Plaintiff attached to his letters

documents that were prepared in the scope of Plaintiff's

official duties, such as his original report and altered report

of the incident.   It is the letters themselves, however, and not

these attached documents that represent the substance of the

speech that Plaintiff asserts is protected.   The attachments

simply provide demonstrative evidence supporting the claims of

misconduct, malfeasance, corruption, abuse of power and breach

of the public trust made in the letters.   Certainly at the

motion to dismiss stage, the Court must accept as true

Plaintiff's assertion that the letters were not written pursuant

to any official duties or responsibilities. [8]   See <u>Andrew v.</u>

<u>Clark</u>, 561 F.3d 261, 267 (4th Cir. 2009) (holding that, because

issue of whether plaintiff wrote a critical memorandum as part

of official duties was a disputed issue of fact, the motion to

dismiss must be denied).

At the motion to dismiss stage, the Court must also reject

Defendant's generalized and unsubstantiated claims that any

disruption to the operation and mission of SCSD caused by

_____

[8] Defendant actually argues elsewhere in his motion that sending
the letters "conflicted with the responsibilities of the
Plaintiff."   ECF No. 15 at 16.

Plaintiff's speech outweighs Plaintiff's interests in the speech. The gravamen of Defendant's argument on this issue appears to be that, because Defendant terminated Plaintiff's employment for sending the letters, his sending those letters "obviously damaged the relationship between Sheriff Jones and [Plaintiff]." ECF No. 15 at 16. That argument, of course, would defeat any free speech retaliation claim by a public employee. Considering the highly significant public interests implicated by Plaintiff's allegations that he was pressured to falsify police reports and file false criminal charges, the Court cannot conclude, at this stage of the litigation, that those interests are overshadowed by concerns about damaged departmental relationships.

As to Plaintiff's federal free speech claim, Defendant also raises the defense of qualified immunity. Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A right is clearly established if "it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202

(2001).  In making this assessment, the Court looks to the

settled law at the time of the alleged constitutional act to

determine whether the right allegedly violated was clearly

established.  Robinson v. Balog, 160 F.3d 183, 187 (4th Cir.

1998).

Under the facts as alleged in the First Amended Complaint,

the Court has no difficulty concluding that a reasonable officer

in Defendant Jones' position would have known that it was

unlawful to terminate a deputy for bringing serious police

misconduct and a breach of the public trust to the attention of

government agencies and the press.  Plaintiff's right to free

speech in this context was clearly established.  See Andrew,

supra; Robinson v. Balog, 160 F.3d 183, 188 (4th Cir. 1998)

(holding that speech that "sought to bring to light actual or

potential wrongdoing or breach of public trust on the part of

government employees" was protected public speech); Brawner v.

City of Richardson, 855 F.2d 187, 191-92 (5th Cir.1988) ("The

disclosure of misbehavior by public officials is a matter of

public interest and therefore deserves constitutional

protection, especially when it concerns the operation of a

police department." (footnote omitted)).  Furthermore, at this

stage in the litigation, the Court cannot find that Defendant

could reasonably conclude, based on well settled law, that any

disruption to the operation and mission of SCSD caused by

Plaintiff's speech outweighs Plaintiff's interests in that speech.  See Ridpath, 447 F.3d at 318 (affirming denial of motion to dismiss free speech claim on ground of qualified immunity where detrimental effect of speech on the workplace and provision of public services could not be assessed without discovery).

Defendant's challenge to Plaintiff's abusive discharge claim fails for reasons similar to the failure of his challenge to Plaintiff's free speech claims.  To state a cause of action for abusive discharge under Maryland law, a plaintiff must demonstrate that the "motivation for the discharge contravenes some clear mandate of public policy."  Watson v. Peoples Sec. Life Lis. Co., 588 A.2d 760, 764 (Md. 1991).  In the First Amended Complaint, Plaintiff identifies his First Amendment right of speech as the clear mandate of public policy supporting his abusive discharge claim.  In moving to dismiss this claim, Defendant argues that, based on his premise that Plaintiff cannot establish a deprivation of his First Amendment rights, he cannot support his abusive discharge claim.  ECF No. 15 at 23.[9]

---

[9] Because Defendant's counsel apparently did not read the First Amended Complaint, he also challenged Plaintiff's reliance on his right to petition the government for redress as support for an abusive discharge claim.  ECF No. 15 at 22.  As noted above, Plaintiff deleted reference to the right to petition from the First Amended Complaint.

Because the Court rejects that premise, it rejects the conclusion as well.

Finally, Defendant argues that he is entitled to immunity under Section 5-522 of the Courts and Judicial Procedure Article of the Maryland Code. Section 5-522 provides that state personnel are immune from suit and from liability for tortious conduct committed within the scope of their public duties and without malice or gross negligence. Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). Defendant proposed that "Plaintiff does not allege that Defendant Sheriff Jones acted outside the scope of his employment or with malice or gross negligence." ECF No. 15 at 23. Of course, had Defendant's counsel read the First Amended Complaint, the following allegations would have been discovered:

> Defendant Jones disregarded the administrative hearing board's recommendation, and with no reason other than to hurt and punish the Plaintiff for speaking publicly about and placing the Sheriff and the SCSO in a negative light, upped the punishment and terminated the Plaintiff from his employment. The alleged basis for doing so was nothing more than a contrived pretext to deprive the Plaintiff of his valuable employment. The termination of the Plaintiff, in violation of Federal and State constitutional protections, was an ultra vires act and outside of the scope of Defendant Jones' employment.

First Am. Compl. ¶ 26. The Court finds these allegations sufficient to defeat Defendant's assertion of state personnel immunity at this stage of the litigation.

For these reasons, Defendant's motion will be denied in its entirety.  A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: April 21, 2011