IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES "TROY" DURHAM          *
                            *
          Plaintiff          *
     v.                      *          Civil No. WMN-10-cv-2534
                            *
ROBERT N. JONES              *
                            *
          Defendant          *
                            *

*     *     *     *     *     *     *     *     *     *     *     *     *

**MEMORANDUM**

Pending before this Court are a number of post-trial motions: (1) Plaintiff's Motion for Attorney's Fees and Costs, ECF No. 88; (2) Defendant's Motion for Judgment Notwithstanding the Verdict or for New Trial, ECF No. 97; (3) Defendant's Claim of Exemption, ECF No. 103; (4) Plaintiff's Motion for Entry of Judgment on Garnishment, ECF No. 114; and (5) Plaintiff's Motion to Compel, ECF No. 110.  The parties have fully briefed these motions.  Plaintiff has also filed a Motion for Sanctions, ECF No. 111, pursuant to Rule 11.

Upon consideration of the pleadings, facts and applicable law, the Court determines that (1) no hearing is necessary, Local Rule 105.6, (2) Plaintiff's Motion for Attorney's Fees and Costs will be granted in part and denied in part; (3) Defendant's Motion for Judgment Notwithstanding the Verdict, or for New Trial will be denied; (4) Defendant's Claim of Exemption

will be granted; (5) Plaintiff's Motion for Entry of Judgment on
Garnishment will be denied, (6) Plaintiff's Motion to Compel
will be granted, and (7) the Motion for Sanctions will be
denied.

**I. BACKGROUND**

Briefly, this matter involves a dispute regarding the
termination of Plaintiff's employment.  Plaintiff Troy Durham
was employed as a Deputy Sheriff for the Somerset County
Sheriff's Office (SCSO), and Defendant Robert N. Jones is the
Sheriff of Somerset County.  In August 2008, Plaintiff used
force while assisting a Maryland State Trooper to apprehend a
suspect resisting arrest and subsequently prepared an arrest
report describing this use of force.  According to the testimony
presented at trial, one of Plaintiff's superiors ordered that he
change his report, and threatened suspension and criminal
charges if he failed to do so.  Plaintiff consented and amended
the report.

Plaintiff, however, was very upset by the threats made
against him by other members of SCSO.  To bring light to this
perceived misconduct, Plaintiff drafted a letter[1] explaining the
circumstances of the initial arrest and the conduct of his
commanding officers in the days following, and alleging
"misconduct, malfeasance, corruption, abuse of power and breach

---

[1] This letter was admitted at trial as Plaintiff's Exhibit 5.

of the public trust" on the part of several SCSO officers including Defendant.   Plaintiff sent this letter to various state agencies, the Governor, Somerset County State's Attorney Office, the press, and an unnamed United States Senator. Plaintiff attached to the letters a copy of the police report and the grievance he filed with Somerset County.

Plaintiff was subsequently internally charged with 12 violations of SCSO's Rules, Policy and Procedures: 10 violations related to his use of force on the arrest and 2 violations related to his letter writing.   These two charges were for dissemination of departmental information without authorization and unbecoming conduct.   A hearing was held on those charges and Plaintiff was found guilty for the two charges related to his letter writing.   The hearing board recommended 5 days of suspension without pay for each of the two findings of guilt and forwarded this recommendation to Defendant.   Defendant reviewed the recommendation, and decided to increase the penalty to termination of employment.

Plaintiff filed the present suit, alleging that Defendant's decision to terminate his employment was wrongful and in violation of his free speech rights under the First Amendment of

the United States Constitution.[2]  A four-day jury trial commenced

on May 14, 2012, and concluded on May 17, 2012, when the jury

returned a verdict in favor of Plaintiff Durham on one count of

First Amendment retaliation under 42 U.S.C. § 1983.  The jury

awarded $412,000 in economic damages, $700,000 in non-economic

damages, and $200 in punitive damages against Defendant.

## II.   MOTION FOR JUDGMENT NOTWITHSTANDINT THE VERDICT, FOR NEW TRIAL, OR TO STAY THE JUDGMENT

Defendant has filed a motion under Federal Rule of Civil

Procedure 50(b) requesting that the Court determine that he is

entitled to qualified immunity and enter judgment in his favor.

In the alternative, Defendant requests that the Court grant him

a new trial pursuant to Rule 59 in light of the Maryland Court

of Special Appeals' recent opinion that Defendant's decision to

terminate Plaintiff's employment was arbitrary and capricious.[3]

Plaintiff opposes the motion, arguing that Defendant has waived

his argument for qualified immunity by not raising it earlier,

that even if the argument was not waived, Defendant is not

entitled to qualified immunity.  He also argues that Defendant

---

[2] Plaintiff also made a claim under Article 40 of the Maryland
Declaration of Rights, but this claim was dropped before the
jury was charged.

[3] Defendant initially requested a stay of the judgment pending a
decision by the Court of Special Appeals, ECF No. 97-1 at 13,
but after the motion was fully briefed, and before this Court
had the opportunity to consider the motion, the Court of Special
Appeals issued its ruling, which Defendant has provided to this
Court in a Supplement to the motion.  See ECF No. 119.

is not entitled to a new trial because the decision of the Court
of Special Appeals does not change the fact that Plaintiff was
fired.

### A. Judgment Notwithstanding the Verdict

Rule 50 governs the requirements for making both initial
and renewed judgments as a matter of law.  This rule specifies
that a party may file a renewed motion for judgment as a matter
of law within twenty-eight days of the entry of judgment.  The
Rule 50(b) motion is a "renewed" motion, as the Rule necessarily
requires that the movant make an initial motion under Rule 50(a)
prior to submission of the case to the jury.  See Fed. R. Civ.
P. 50; Price v. City of Charlotte, N.C., 93 F.3d 1241, 1482-49
(4th Cir. 1996); see also Singer v. Dungan, 45 F.3d 823, 828
(4th Cir. 1995).  The initial Rule 50(a) motion "must specify
the judgment sought and the law and facts that entitle the
movant to judgment."  Fed. R. Civ. P. 50(a)(2).

 "While the United States Court of Appeals for the Fourth
Circuit has rejected a rigid interpretation of this 'specificity
requirement,' it has emphasized the need for 'a proper [Rule
50(a)] motion as foundation for a motion [under Rule 50(b)].'"
Wallace v. Poulos, --- F. Supp. 2d ---, 2012 WL 993380 at *4
(D. Md. Mar. 22, 2012) (citing Miller v. Premier Corp., 608 F.2d
973, 979 n. 3 (4th Cir. 1979)).  This requirement "is not a mere
technicality" but "serves vitally important interests in the

fair conduct of litigation." <u>Miller</u>, 608 F.2d at 980 n.3.
Thus, in determining whether such interests are met, "the Fourth
Circuit has focused principally on whether the moving party,
either in written or oral argument, provided sufficient notice
to his opponent of the alleged deficiencies in the opponent's
case." <u>Wallace</u>, 2012 WL 993380 at *4 (citing to <u>Singer</u>, 45 F.3d
at 829; <u>Miller</u>, 608 F.2d at 979 n. 3; <u>Price</u>, 93 F.3d at 1249
(concluding that a defendant challenging the sufficiency of
evidence regarding damages from emotional distress had preserved
the issue for review by asserting at oral argument on its Rule
50(a) motion that the plaintiffs had not submitted sufficient
evidence of mental or emotional distress)).

At the close of Plaintiff's case, Defendant orally moved
for judgment arguing, among other things, that he was entitled
to qualified immunity.  The Court heard argument from both
parties, and denied the motion.  Defendant did not present a
case, but renewed the motion for judgment at the close of his
case to ensure that the motion was preserved.  The Court denied
the motion again, and sent the case to the jury.  Defendant now
renews his motion for judgment, solely relying on the argument
that he is entitled to qualified immunity.

Plaintiff preliminarily argues that the Court need not
consider the Rule 50(b) motion because Defendant has waived the
argument presented in the motion.  He contends that the argument

in support of qualified immunity in this 50(b) motion is a
substantial variation from the arguments previously presented in
support of qualified immunity, including those arguments made in
support of the 50(a) motion at trial.  ECF No. 104 at 4.  As the
50(b) motion presents what he perceives to be a "new" argument,
Plaintiff argues that it has been waived.

    In making this argument, however, Plaintiff urges the Court
to strictly construe the requirements of Rule 50, despite the
precedent discussed above indicating that the Fourth Circuit
construes these requirements more liberally.  Though there is no
official transcript of the trial at this time, both parties
acknowledge that qualified immunity was raised as a basis for
Defendant's Rule 50(a) motion, see ECF No. 97-1 at 2; ECF No.
104 at 3-4, and this is consistent with the Court's
recollection.  And, though the nuanced details of Defendant's
argument may have changed between his oral argument of the 50(a)
motion and the written submission of his 50(b) motion, Plaintiff
was clearly on notice that Defendant believed he was entitled to
qualified immunity and that he believed Plaintiff's case was
deficient because it did not prove that Plaintiff's free speech
rights were clearly established.  As such, the Court determines
that the requirements of Rule 50 were met and Defendant has not
waived his argument in support of qualified immunity.

Notwithstanding, the Court is not convinced that Defendant is entitled to qualified immunity.  As this Court previously discussed in its memorandum dated April 21, 2011, ECF No. 25, qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A right is clearly established if "it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier v. Katz, 533 U.S. 194, 202 (2001).  In making this assessment, the Court looks to the settled law at the time of the alleged constitutional act to determine whether the right allegedly violated was clearly established.  Robinson v. Balog, 160 F.3d 183, 187 (4th Cir. 1998).

Defendant argues that he is entitled to qualified immunity because his decision to terminate Plaintiff's employment did not clearly offend the First Amendment.  He states that his testimony at trial indicated that he fired Plaintiff because Plaintiff "stabbed him in the back" by calling him "a crook," ECF No. 97-1 at 4, and that the speech that this testimony refers to is the portion of Plaintiff's letter that the Court instructed the jury was not protected under the First Amendment.

Id. at 3.  Defendant also argues that Plaintiff's First
Amendment rights in this context were not "clearly established"
because there is no brightline test that he could have applied
to easily determine whether or not terminating Plaintiff's
employment would violate Plaintiff's free speech rights.  Id. at
12.

Defendant is making two arguments above.  First, that
Defendant based his decision to terminate Plaintiff's employment
solely on Plaintiff's unprotected speech.  This contention,
however, is in conflict with the jury's verdict.  The Court
instructed the jury as to which portions of the letter were
protected and which portions were not, and then charged the jury
to determine whether Plaintiff had proven, by a preponderance of
the evidence, that "his protected speech was a motivating factor
in the defendant's decision to terminate plaintiff's
employment."  Jury Instr. at 25.  This was the sole issue that
the jury had to determine to reach the verdict.  Thus, the
jury's finding in favor of Plaintiff necessarily indicates that
it concluded, despite Defendant's testimony to the contrary,
that the decision to terminate Plaintiff's employment was
motivated by the portion of speech that was protected.  Viewing
the evidence in the light most favorable to Plaintiff, the Court
determines that, relying on such evidence, a reasonable jury
could have made this finding.  See Duke v. Uniroyal, Inc. 928

9

F.2d 1413, 1417 (4th Cir. 1991) ("When determining whether the evidence is sufficient to support the jury's verdict, the evidence must be reviewed in the light most favorable to plaintiffs, giving them the benefit of all inferences.  If, with that evidence, a reasonable jury could return a verdict in favor of plaintiffs, the court must defer to the judgment of the jury, even if the court's judgment on the evidence differs."). Therefore, the Court will defer to the judgment of the jury and not disturb the verdict.  For these reasons, Defendant's first argument fails.

Defendant's second argument is that Plaintiff's rights in this context were not clearly established.  This Court, however, has already determined that Plaintiff's right to bring "serious police misconduct and a breach of the public trust to the attention of government agencies and the press" was clearly established.  See ECF NO. 25 at 18 (citing Andrew v. Clark, 561 F.3d 261, 267 (4th Cir. 2009); Robinson v. Balog, 160 F.3d 183, 188 (4th Cir. 1998) (holding that speech that "sought to bring to light actual or potential wrongdoing or breach of public trust on the part of government employees" was protected public speech); Brawner v. City of Richardson, 855 F.2d 187, 191-92 (5th Cir.1988) ("The disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection, especially when it concerns the

operation of a police department." (footnote omitted)).  It was
in accordance with this determination that the Court instructed
the jury on which portions of the letter were protected and
which were not.  <u>See</u> Jury Instr. at 23.  The speech that the
Court found to be protected was that which recounted the
circumstances surrounding Durham's creation of the original
police report and the subsequent threats that he faced before
amending the report; in other words, the portion of the letter
attempting to bring serious police misconduct to the attention
of the public.  This is the speech on which the jury determined
Defendant relied when he terminated Plaintiff's employment, and
is speech for which Plaintiff's First Amendment rights were
clearly established.

Moreover, the Court disagrees with Defendant's suggestion
that using the factors[4] in <u>Ridpath v. Bd. Of Governors Marshall
Univ.</u>, 447 F.3d 292, 371 (4th Cir. 2006), to balance Plaintiff's
interest in his protected speech against "the government's
interest in the effective and efficient fulfillment of its
responsibilities to the public," <u>Connick v. Myers</u>, 461 U.S. 138,
150 (1983), requires "sophisticated balancing" and is
"inherently subjective," thus making Plaintiff's right anything
but "clearly established."  <u>See</u> ECF No. 97-1 at 10.  At trial

---

[4] These factors were derived from the balance test performed by
the Supreme Court in <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563.
573 (1968).

there was little testimony or evidence offered to indicate that
Defendant anticipated that there would be more than a minor
disruption to the operation and mission of the SCSO, and, as
Plaintiff recounts and Defendant does not dispute, under cross-
examination Defendant "was completely unable to articulate any
harm or disruption, whatsoever, to the Sheriff's Department,
Somerset County government, or the public at large, as a result
of the Plaintiff's disclosure."  ECF No. 104 at 4.  In view of
this dearth of evidence, the Court cannot find that Defendant,
in evaluating the Pickering factors, could reasonably have
concluded that the potential, likely minimal, disruption caused
by Plaintiff's protected speech outweighed Plaintiff's interest
in the speech.  As such, Defendant is not entitled to qualified
immunity.

   **B. New Trial**

     On a motion for new trial brought under Rule 59(a), a court
may grant a new trial if "(1) the verdict is against the clear
weight of the evidence, or (2) is based upon evidence which is
false, or (3) will result in a miscarriage of justice, even
though there may be substantial evidence which would prevent the
direction of a verdict."  Cline v. Wal-Mart Stores, Inc., 144
F.3d 294, 301 (4th Cir. 1998) (quoting Atlas Food Sys. & Servs.,
Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir.

1996)).   The decision to grant a new trial is entrusted to the discretion of the court.   Id. at 305.

Defendant argues in the Supplement to his original motion that he is entitled to a new trial because the recent decision of the Maryland Court of Special Appeals "changes the essential fact upon which the jury based its decision in this case: that Plaintiff has been terminated from his position in the Sheriff's office."   ECF No. 119 at 2.   In making this argument, he appears to be invoking the second reason enunciated in Cline, that the jury's verdict "is based upon evidence which is false."[5]

The Defendant enclosed a copy of the Court of Special Appeals' opinion with his Supplement.   ECF No. 119-1 (Durham v. Jones, Slip Op. No. 1382 (Md. Ct. Spec. App. Aug. 1, 2012)). The Court of Special Appeals reviewed the decision of the Circuit Court for Somerset County, which had affirmed Defendant's decision to increase from a ten day suspension to termination of employment the penalty recommended by the Board after Plaintiff's hearing pursuant to the Law Enforcement Officer's Bill of Rights (LEOBR).   Upon review, the Court of

---

[5] In the Supplement, Defendant states that Plaintiff's argument made to the jury at trial that he is entitled to front pay because he was terminated from his job no longer holds "because the clear weight of the evidence upon which the jury relied—evidence upon [which] the jury based its decision—[is] no longer true."   ECF No. 119 at 2.   Though he uses language mirroring the first justification for a new trial enunciated in Cline, this argument in fact suggests that the problem with the evidence is its alleged falsity, not the weight with which it was accorded.

Special Appeals reversed the decision of the Circuit Court and determined that Defendant's decision to disregard the Board's recommendation and increase the penalty was arbitrary and capricious.  Id. at 17.

One of the essential elements of a First Amendment § 1983 retaliation claim is that adverse action is taken against a plaintiff.  See Suarez Corp. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000).  As Defendant indisputably terminated Plaintiff's employment, the jury was instructed that this element of proof of adverse action was met.[6]  Jury Instr. at 24.  Defendant now argues, however, that the decision from the Court of Special Appeals essentially undoes this adverse action and so the jury's decision is no longer valid because it was based on a fact that is no longer true.

This argument, however, does not hold water.  Though the Court of Special Appeals held that Defendant's decision to take adverse action by terminating Plaintiff's employment was arbitrary and capricious, this holding does not mean no adverse action was taken.  See Phelan v. Cook County, 463 F.3d 773, 781 (7th Cir. 2006) ("reinstatement and reimbursement do not bar a finding of adverse employment action where there was an actual termination").  Plaintiff still lost his job and was unable to find comparable work, and the jury determined that because of

_____

[6] Defendant did not make any objections to this instruction.

14

this Plaintiff suffered both economic and non-economic damages. In fact, the decision of the Court of Special Appeals only seems to reaffirm the jury's determination that Defendant acted wrongfully in terminating Plaintiff's employment.

Defendant also argues that if, as a result of the decision of the Court of Special Appeals, Plaintiff is reinstated and given backpay, then he will receive a windfall because he was already awarded economic damages to compensate him for his lost wages in the present case.  First, the Court will note that if Plaintiff is reinstated and awarded backpay, this will in no way affect the non-economic or punitive damages that he was awarded by the jury.  This is because the non-economic damages represent compensation for losses, including mental anguish and emotional pain and suffering that Plaintiff experienced or will likely experience in the future, see Jury Instr. at 30, and the punitive damages are awarded as a form of punishment; neither form of damages considers Plaintiff's lost wages.  Second, though the Court of Special Appeals determined that Defendant's decision was arbitrary and capricious, its decision did not specify a remedy.  It is uncertain what the consequence of the Court of Special Appeals' decision will in fact be, and Defendant obviously can advise whichever state court is charged with determining a remedy of any payments he has made to satisfy any award of backpay in the present case.

For these reasons, the Court will exercise its discretion to deny Defendant's request for a new trial, and the Motion will be denied.[7]

## III. MOTION FOR FEES AND COSTS

Plaintiff has filed a motion pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, seeking to recover reasonable attorney's fees and costs accrued in the prosecution of this matter.  This statute provides that in a federal civil rights action, such as an action brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party. . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  It is not disputed that Plaintiff is a "prevailing party," as judgment has been entered in his favor.

Plaintiff requests that the Court award him fees in the amount of $200,880.00, a figure he calculated by multiplying 502.2 hours by a $400 per hour rate, and costs in the amount of

---

[7] Plaintiff has filed a Motion for Sanctions pursuant to Rule 11, arguing the Defendant's Motion to Stay pending a decision by the Court of Special Appeals is "frivolous and unwarranted under any existing law," and was made "for the improper purpose of delaying this matter and creating unnecessary work for the Court and [Plaintiff's] counsel." ECF No. 111.  While the Court ultimately denied Defendant's request for a new trial, which was requested in lieu of the stay once the Court of Special Appeals issued its decision, the Court does not agree that the motion was frivolous or presented for an improper purpose, particularly because the issue of double recovery is still somewhat uncertain.  See Fed. R. Civ. P. 11(b).  As such, the Court will deny the Motion for Sanctions.

$8,485.43.  He also requests an award of 6% prejudgment interest on these amounts, and that the Court retain jurisdiction to issue supplemental awards as he continues to expend time in an attempt to collect Plaintiff's judgment.

When awarding attorney's fees, the court should determine the lodestar amount, which is "the number of hours reasonably expended on litigation multiplied by a reasonable hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." Perdue v. Kenny A., --- U.S. ----, ----, 130 S. Ct. 1662, 1672 (2010).  A court may, however, award an enhancement to the lodestar figure "in rare and exceptional circumstances."  Id. (internal quotations omitted).  A fee applicant bears the burden of proving the enhancement is necessary and must do so with reference to "specific evidence that the lodestar fee would not have been adequate to attract competent counsel."  Id. at 1674 (internal quotations omitted).

Plaintiff acknowledges that under the Local Rules of the District Court for the District of Maryland, the presumptive lodestar fee range is $225 to $300 per hour for attorneys who have been admitted to the bar for 9 to 14 years.[8]  See Local

---

[8] Plaintiff's attorney, Mr. Hoffman, has 13 years of experience in the bar.

Rules, App. B: Rules and Guidelines for Determining Attorneys'
Fees in Certain Cases.  Plaintiff argues, however, that an
enhancement is appropriate due to the "undesirability of this
litigation."  ECF No. 88 at 11.  He elaborates by explaining
that the case is undesirable because (1) his counsel has had to
disburse out-of-pocket expenses without timely repayment by
Plaintiff; (2) Defendant is represented by "the largest public
law firm in the State of Maryland (the Maryland Attorney
General's office);" and (3) because the Defendant has proclaimed
himself to be "judgment proof."  ECF No. 88 at 9.  Plaintiff
also points to the very favorable judgment that he achieved,
with an award of over $1,000,000.

In support of his claim for 502.2 billable hours, Plaintiff
has submitted timesheets describing the specific tasks for which
he was billed.  ECF Nos. 88-1, 105-1, 105-3.  Furthermore,
Plaintiff argues that, due to the undesirability of the case, as
discussed supra, the presumptive lodestar range is not "adequate
to attract competent counsel," see Perdue, 130 S. Ct at 1673,
and points to the fact that "[t]hree separate lawyers declined
to assist the Plaintiff with this case, before Hoffman agreed to
represent the Plaintiff."  ECF No. 88 at 10.  Plaintiff also
notes that the formula for hourly rates in the Local Rules is
based entirely on number of years of bar admission, and Perdue
held that "an enhancement may be appropriate where the method

used in determining the hourly rate employed in the lodestar

calculation does not adequately measure the attorney's true

market value, as demonstrated in part during the litigation.

This may occur if the hourly rate is determined by a formula

that takes into account only a single factor (such as years

since admission to the bar) ...."  130 S.Ct. at 1674.

Defendant challenges some of the billable hours claimed by

Plaintiff, particularly those claimed for appellate work done in

furtherance of Plaintiff's LEOBR appeal and "for pursuing claims

against those no longer parties, for claims now abandoned, and

for pursuing motions for sanctions which were denied."  ECF No.

96 at 5.  Defendant also challenges Plaintiff's claim to an

enhanced billing rate, arguing that Plaintiff "has shown no

compelling reason why" an award of the maximum lodestar rate of

$300 could not attract competent counsel in this case.  Id. at

8.

The Court is generally satisfied with the number of

billable hours claimed by Plaintiff, which is 502.2.  Plaintiff

has submitted timesheets which thoroughly account for these

hours, and the total is generally reasonable, particularly in

light of the fact that this case was thoroughly litigated and

tried in a four-day jury trial at the end of which Plaintiff was

awarded judgment on his remaining claim.  With respect to the

hours contested by Defendant, the Court will not deduct the

19

entire 28.3 hours expended on claims that have now been
abandoned and an unsuccessful motion for sanctions.  Though some
of this time was expended pursuing what ultimately were
unsuccessful claims, the Court recognizes that such hours were
expended in furtherance of the litigation of the case as a whole
and centered on a common core of facts and related legal
theories.  See Imgarten v. Bellboy Corp., 383 F. Supp. 2d 825,
839 (D. Md. 2005).  Notwithstanding, in the spirit of
compromise, Plaintiff has agreed to accept a 5.1 hour reduction
for time spent pursuing claims against Somerset County.  ECF No.
105 at 7.  This reduction is factored into Plaintiff's claim for
502.2 hours of billable time.  The Court agrees that this is a
fair compromise, and will not reduce the lodestar number by the
28.3 hours proposed by Defendant.

The Court will, however, reduce the lodestar number by the
72.6 hours expended by Plaintiff's counsel in pursuit of the
LEOBR appeal.  Plaintiff notes that he is not seeking these
fees, but argues that the Court may award them as the LEOBR
appeal is "both useful and of a type ordinarily necessary to
advance the civil rights litigation to the state it reached
before settlement."  ECF No. 105 at 4 (quoting Webb v. Bd. of
Educ. of Dyer Cty., Tenn., 471 U.S. 234, 243 (1985)).  Plaintiff
contends that pursuit of the LEOBR appeal, through which he
could potentially be awarded reinstatement and backpay, was

necessary to hedge against an inability to recover a judgment
from Defendant.  Though this may be the case, the Court does not
view the LEOBR appeal as any type of "action or proceeding to
enforce [§ 1983]," see Webb, 471 U.S. at 241, but rather as an
independent avenue of relief, which was undertaken concurrently
with this case.  As such, the Court will reduce the lodestar
number by 72.6 hours.  The Court will award the additional 57.1
hours requested by Plaintiff in his Reply and thoroughly
accounted for in the timesheets attached thereto.  This number
is also already factored into Plaintiff's lodestar total of
502.2 hours.  Accordingly, the Court finds that 429.6 (502.2
less 72.6) hours constitutes a reasonable total.

    With respect to the hourly rate, the Court declines to
apply an enhancement to the presumptive rate of $300 per hour.
The Supreme Court has emphasized that enhancements should be
applied sparingly and only in exceptional cases.  Spencer v.
Central Services, LLC, Civ. No. CCB-10-3469, 2012 WL 142978 (D.
Md. Jan. 13, 2012) (referring to Purdue, 130 S. Ct. at 1674).
As noted by Judge Blake in Spencer, "Plaintiffs' counsel appears
to have performed laudably, but this court does not find the
upper end of the lodestar range is too low to attract competent
counsel."  Id.  Plaintiff acknowledges that the Fourth Circuit
has stated that "risk of counsel's not being compensated in a
case . . . [is] not a sufficient ground for enhancing the

lodestar fee," <u>Lyle v. Food Lion, Inc.</u>, 954 F.2d 984, 989 (4th
Cir. 1992), yet continues to argue the "apparent inability to
collect the underlying Judgment" is evidence of this case's
extreme undesirability.   ECF No. 88 at 11.   Though this Court
agrees that the <u>Lyle</u> opinion leaves open the possibility that
this factor in conjunction with other extreme circumstances
could justify an enhancement, the Court does not agree that such
extreme circumstances were present in this case.   Because § 1983
litigation by its very nature involves claims filed against
state actors, such defendants are frequently provided with a
taxpayer defense.   Furthermore, these suits are filed against
individuals and not local governments, so encountering an
individual government employee-defendant who is insolvent is not
an extraordinary occurrence.

   In electing to apply the presumptive lodestar rate, this
court has considered all factors enumerated in <u>Johnson v.
Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir.
1974),[9] most of which are subsumed in the rate and hour analysis.

---

[9] These factors are:(1) the time and labor required in the case,
(2) the novelty and difficulty of the questions presented, (3)
the skill required to perform the necessary legal services, (4)
the preclusion of other employment by the lawyer due to
acceptance of the case, (5) the customary fee for similar work,
(6) the contingency of a fee, (7) the time pressures imposed in
the case, (8) the award involved and the results obtained, (9)
the experience, reputation, and ability of the lawyer, (10) the
"undesirability" of the case, (11) the nature and length of the

This includes the difficulty of the questions presented, the undesirability of the case, the risk of not receiving any recovery, and awards made in similar cases, see Spencer, 2012 WL 142978 (declining enhancement and awarding an hourly rate of $300 to Mr. Hoffman); Chapman v. Ourisman Chevrolet Co., Inc., Civ. No. AW-08-2545, 2011 WL 2651867 (awarding an hourly rate of $300 to Mr. Hoffman).  Accordingly, the Court awards attorney's fees to the Plaintiff in the amount of $128,880, which represents 429.6 hours at a rate of $300 per hour.  Costs in the amount of $8,573.18 are not challenged and also will be awarded. ECF Nos. 88-1 at 32, 105 at 4 24.

Finally, given that this case was filed in September 2010 and resolved reasonably expeditiously, in a trial held in May 2012, the Court does not find that the passage of time was sufficient to adversely impact the value of the Plaintiff's compensation in a meaningful way.  The 20 month period of pendency is in contrast to the cases cited by Plaintiff, which were pending for a number of years before resolution.  See, Daly v. Hill, 790 F.2d 1071, 1081 (4th Cir. 1986) (noting that "civil rights litigation often spans several years, and consequently compensation ... often occurs long after the relevant services have been rendered.  This delay in payment of attorney's fees

professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases.

obviously dilutes the eventual award and may convert an otherwise reasonable fee into an unreasonably low one."); <u>Ohio River Valley Env't Coalition, Inc. v. Green Valley Coal Co.</u>, 511 F.3d 407 (4th Cir. 2007 (pending over four years).  For these reasons, the Court declines to grant prejudgment interest.[10]

In sum, the Court will grant in part and deny in part Plaintiff's motion with the result that the Court awards $128,880 in fees and $8,573.18 in costs to Plaintiff.  The Court will also retain jurisdiction to issue supplemental awards as may be appropriate under the circumstances.

## IV.  DEFENDANT'S CLAIM OF EXEMPTION AND PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT ON GARNISHMENT AGAINST GARNISHEE HEBRON SAVINGS BANK

Defendant has filed a Claim of Exemption requesting that the Court dismiss the writ of garnishment that Plaintiff served on Defendant's bank, Hebron Savings Bank (Hebron).  ECF No. 103. In its Answer to Plaintiff's writ of garnishment, Hebron indicated that Defendant's accounts total $2,180.75.  ECF No. 107.  Defendant seeks to exempt that entire amount pursuant to Md. Code Ann., Cts. & Jud. Proc. § 11-504.[11]  Specifically, § 11-

---

[10] The Court also notes that an award of interest at the rate of 6%, a requested by Plaintiff and as provided for in the Maryland Constitution, Article 3, Section 57, would far exceed the low rate of inflation that has persisted during the pendency of this case, which has coincided with a period of economic downturn.

[11] Section 11-504 is made applicable here by Fed. R. Civ. P. 69(a)(1) which provides that "[t]he procedure on execution – and

504(b)(5) allows a judgment debtor to exempt "[c]ash or property
of any kind equivalent in value to $6,000" by making an election
to exempt such property with 30 days from the date of the
attachment.

Plaintiff opposes Defendant's Claim of Exemption and argues
that § 11-504 is preempted by federal law.[12]  Briefly,
preemption, as Plaintiff notes, stems from the principles of
federalism enshrined in the Constitution.  ECF No. 106 at 4;
Arizona v. U.S., 567 U.S. ---, 132 S. Ct. 2492, 2500 (2012).
The Supremacy Clause of the Constitution clearly provides that
federal law "shall be the Supreme Law of the Land; and the
Judges in every State shall be bound thereby, any Thing in the
Constitution or Laws of any State to the Contrary

---

in proceedings supplementary to and in aid of judgment or
execution – must accord with the procedure of the state where
the court is located."  See also Trustees of Ironworkers Union
No. 16 Pension Plan v. Turner, No. AMD-07-1691, 2010 WL 917359
(D. Md. Mar. 10, 2010).

[12] In his Opposition, Plaintiff offered two additional arguments.
First, that Defendant's claim should be denied because Hebron
had not filed its Answer to the writ of garnishment at the time
Defendant filed his Opposition and, as a result, Plaintiff's
claim was not ripe.  ECF No. 106 at 3.  Hebron filed its Answer
the same day that Plaintiff filed his Opposition.  See ECF No.
107.  Therefore, the Court will not consider Plaintiff's
ripeness argument.  Second, Plaintiff argued that Defendant's
request should be denied because dismissal of a writ of
garnishment is not a form of relief provided for by § 11-504.
ECF No. 106 at 6-7.  Because the Court is deciding Plaintiff's
Claim of Exemption and Defendant's Motion for Judgment together,
to the extent that Defendant's request for dismissal of the writ
of garnishment is an error, it is of no import.

notwithstanding." Art. VI, cl. 2. Thus, preemption can occur in three ways: "(1) when Congress has clearly expressed an intention to do so . . . ; (2) when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation . . . ; and (3) when a state law conflicts with federal law." Coll. Loan Corp. v. SLM Corp., a Delaware Corp., 396 F.3d 588, 595-96 (4th Cir. 2005). Plaintiff's argument is based on the third variety of preemption. He suggests that § 11-504 is preempted because it "stands in the way of compliance with Section 1983 and the judgment entered in this case." ECF No. 106 at 6.

To support his position, Plaintiff directs the Court to Hankins v. Finnel, 964 F.2d 853 (8th Cir. 1992). In that case, the Eighth Circuit held that § 1983 preempted a Missouri state statute, the Missouri Incarceration Reimbursement Act (MIRA), that would have allowed the state to recoup ninety percent of the judgment that the plaintiff had previously been awarded in his § 1983 action against the defendant, an instructor at a state run penitentiary school, as costs associated with the plaintiff's incarceration. Id. at 854, 861. The MIRA specifically authorized the state to recover money from funds that a prisoner "received from the State a result of a civil action against one of its employees." Id. at 854. The court reasoned that permitting the state to recover the judgment

awarded to the plaintiff "would be inimical to the goals of [§ 1983]" because "neither the state nor its employees would have the incentive to comply with the constitutional rights of prisoners." Id. at 861 (internal quotations and citations omitted).  Thus, the court concluded "that section 1983 preempts the Missouri Incarceration Reimbursement Act as it is applied in this case.  To the extent that the Act permits the State to recoup the very monies it has paid to satisfy a section 1983 judgment against one of its employees, the Act is invalidated under the Supremacy Clause." Id. at 861.

Hankins provides no support for Plaintiff's position in this case for two reasons.  First, the Eighth Circuit itself, along with other courts, has repeatedly emphasized the narrowness of the holding in Hankins.  See El-Tabech v. Clarke, 616 F.3d 834, 840 (8th Cir. 2010) ("In Hankins, we carefully held that 'section 1983 preempts the Missouri Incarceration Reimbursement Act as it is applied in this case.'") (emphasis in original); Parsons v. Heebsh, No. 09-CV-14411, 2010 WL 3905196 *5 (E.D. Mich. Sept. 30, 2010) (noting that Hankins "is of limited value in cases with facts that are not virtually identical to those in Hankins"); Moore v. Jackson, No. 04-1086, 2004 U.S.App. LEXIS 21332, *3 (8th Cir. Oct. 14, 2004) (per curiam) ("case [fell] outside the limited scope of Hankins"); State Treasurer v. Rusiecki, No. 242238, 2003 Mich.App. LEXIS

837, *3 (Mich. Ct. App. Mar. 27, 2003) (distinguishing <u>Hankins</u>).

More importantly, however, Plaintiff fails to acknowledge that

by approving Rule 69(a)(1), "Congress expressly declared its

intent <u>not</u> to preempt state law."[13]  <u>El-Tabech</u>, 616 F.3d at 839

(emphasis in original).  Indeed, the incorporation of state law

governing the execution of money judgments through Rule 69(a)(1)

eliminates the conflict that Plaintiff argues exists.  Thus, §

11-504 is not preempted by § 1983.

Because the value of Defendant's accounts is below the

$6,000 exemption permitted by § 11-504(b)(5), pursuant to Md.

Rule 2-645(i) the Court will grant Defendant's Claim of

Exemption.  Consequently, the Court will deny Plaintiff's Motion

for Judgment on Garnishment Against Garnishee Hebron Savings

Bank.  Plaintiff's request for attorney's fees associated with

preparing his Opposition to Defendant's Claim of Exemption, ECF

No. 106 at 7, will be denied.

---

[13] As discussed in Note 12, <u>supra</u>, Rule 69(a)(1) makes state law
applicable to the execution of federal money judgments only to
the extent that a federal statute does not apply.  The Advisory
Committee Notes to Rule 69 identify dozens of federal statutes
that do apply to the execution of federal money judgments in
lieu of state law.  Section 1983 is, obviously, not among them.
Had Congress intended for any procedure other than those
provided for by the states to apply to the execution of
judgments awarded for violations of § 1983, it could have done
so.

## V. PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO ANSWER INTERROGATORIES IN AID OF EXECUTION

Plaintiff has filed a "Motion Compelling Judgment-Debtor Jones to Answer Interrogatories In Aid of Execution (And Request for Money Sanctions from Counsel)" (Motion to Compel).  ECF No. 110.  Plaintiff also provided the Court with copies of his interrogatories to Defendant as well as correspondence between the parties' counsel.  See ECF Nos. 110-1 – 110-4.  These documents support Plaintiff's assertion that, at the time he filed his Motion to Compel, Defendant had not yet responded to Plaintiff's interrogatories.  Defendant opposes Plaintiff's motion and in his Opposition states that he responded to Plaintiff's interrogatories on July 27, 2012 and supplemented those responses on August 8, 2012.  ECF No. 116.  Thus, Defendant argues that Plaintiff's Motion to Compel is moot.  Id.

In his reply brief, Plaintiff appears to acknowledge that Defendant has provided responses to his interrogatories, in some form, but, nonetheless argues that "the Motion is not moot because the Judgment-Debtor has not provided proper and full answers to Interrogatories 13 and 14, regarding the existence of insurance."  ECF No. 121 at 1.  Neither party has provided the Court with a copy of Defendant's answers.  From the limited record before the Court, it is unclear whether Defendant has responded to Interrogatories 13 and 14 and his responses do not

29

meet with Plaintiff's approval or whether the interrogatories in question have gone unanswered in their entirety.  If Plaintiff's concern is the former, then the record provided to the Court is wholly insufficient to support granting Plaintiff's Motion to Compel.  Therefore, the Court will grant Plaintiff's motion only to the extent that Defendant has not responded to Interrogatories 13 and 14 at all.  Defendant will be ordered to provide responses – answers or objections – to Interrogatories 13 and 14 to Plaintiff within 7 days of entry of this Memorandum and Order, if he has not already done so.  Plaintiff's request that a sanction of $500.00 be imposed against counsel for Defendant, Stephen Hearne, Esq., will also be denied.

## VI.  CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's Motion for Attorney's Fees and Costs will be granted in part and denied in part; Defendant's Motion for Judgment Notwithstanding the Verdict or New Trial, will be denied; Defendant's Claim of Exemption will be granted; Plaintiff's Motion for Entry of Judgment on Garnishment will be denied; Plaintiff's Motion to Compel will be granted; and Plaintiff's Motion for Sanctions will be denied.  The Court will issue a separate Order.

_____/s/_____
William M. Nickerson
Senior United States District Judge

September 10, 2012